UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>D3 - GERRI AVERY,<br><br>    Defendant. | Case No. 18-20086<br>Honorable Laurie J. Michelson<br>Magistrate Judge |

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT
NOTWITHSTANDING THE VERDICT OR A NEW TRIAL [124]**

Gerri Avery was charged with one count of obstructing or impeding the administration of the internal revenue laws. 26 U.S.C. § 7212(a). Her former employer, Integrated Healthcare Services Practice Management, LLC (Integrated), stopped paying payroll taxes in the third quarter of 2013. Shortly after, the Internal Revenue Service began an investigation into the unpaid payroll taxes. Given her role in the operations of Integrated (signatory authority on company bank account, signer of checks and tax returns), Avery was deemed a responsible party for paying the payroll taxes and assessed a trust fund recovery penalty. And because the IRS believed Avery lied during its investigation, Avery was charged with obstruction.

Avery went to trial. At the conclusion of the government's case, Avery moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). Avery contended the government presented insufficient evidence to show she took an act that

obstructed or impeded the IRS investigation. In response, the government pointed to a voicemail Avery left for the IRS revenue officer investigating the unpaid payroll taxes, along with an affidavit and letter Avery sent, through counsel, to the IRS to avoid paying the trust fund recovery penalty assessment. And the government pointed to exhibits and trial testimony to support its argument that each communication contained misrepresentations of fact designed to conceal Avery's real role in the company and protect her boss, Joseph DeSanto. The government's position can be summarized as follows: "Avery told the IRS that she was not sure how to get Integrated's bank statements while she had online access to that account, which she had used on numerous occasions before. She likewise sent the IRS multiple letters, indicating that all she knew about the finances of the business was that people put checks in front of her and she signed them. In reality, she was at the hub of financial activity for the company, orchestrating the payment of bills and actively discussing which bills needed to be paid." (ECF No. 125, PageID.1328 (citing trial transcripts).)

The Court reserved decision on the motion. *See* Fed. R. Crim. P. 29(b). Avery did not present any evidence and the case was submitted to the jury. The jury returned a guilty verdict. After the verdict, the Court denied the motion. *See* Fed. R. Crim. P. 29(c)(2).

Avery now seeks judgment notwithstanding the verdict under Federal Rule of Criminal Procedure 29, again claiming the evidence was insufficient for a rational jury to convict. Her arguments are the same as those raised in her motion for judgment of acquittal. So this request will be denied for the reasons set forth in the Court's August 2, 2019 ruling.

Acknowledging the Court's prior ruling, Avery alternatively argues that she is entitled to a new trial under Federal Rule of Criminal Procedure 33. (ECF No. 124, PageID.1317.) This Rule provides that the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for a new trial under Rule 33 "may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence. *United States v. Hughes*, 505 F.3d 578, 592-593 (6th Cir. 2007). "Generally, such motions are granted only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *Id*. In evaluating a motion under Rule 33, this Court may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence. *Id*. (citing *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)). Avery contends that the evidence preponderated heavily against the verdict. (ECF No. 124, PageID. 1317.)

The jury convicted Avery of violating 26 U.S.C. § 7212(a), which provides criminal penalties for anyone who

> corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title.

"[T]o act corruptly means to act with the intent to secure an unlawful benefit either for oneself or another." *United States v. McBride*, 362 F.3d 360, 372 (6th Cir. 2004) (alteration in original) (quoting *United States v. Winchell*, 129 F.3d 1093, 1098 (10th Cir. 1997)). To convict under § 7212(a)'s omnibus clause, "which is a 'catch-all' clause aimed at other

3

activities which may obstruct or impede the due administration of the title," *United States v. Kassouf*, 144 F.3d 952, 955 (6th Cir. 1998) (citation omitted), the government must prove that the defendant "is 'acting in response to some pending IRS action of which [he is] aware,'" *United States v. Miner*, 774 F.3d 336, 345 (6th Cir. 2014) (alteration in original) (quoting *McBride*, 362 F.3d at 372). "This means that the government must prove that the defendant is aware that the IRS has taken some step to investigate a particular taxpayer beyond routine administrative procedures such as those required to accept and process tax filings in the ordinary course." *Id*. at 346 (citation omitted).

Avery attempts to show that the jury's verdict was contrary to the evidence by defending the accuracy of the information she provided to the IRS regarding DeSanto's involvement. She says "there was no proof her omission of Mr. DeSanto was anything other than her belief as to the ones who caused the business to close and be unable to pay its bills . . . . She ultimately did send in an Affidavit where Mr. DeSanto admits his responsibility." (ECF No. 124, PageID.1317.)

This argument does not persuade. While this Court found some aspects of Avery's voice mail message to the IRS revenue officer to be unclear, that does not mean the evidence preponderates toward its accuracy. The jury heard significant credible evidence that DeSanto ran the day to day operations of Integrated and that the people Avery identified to the IRS instead of DeSanto, Yisrael Sigler and Hussain Huraibi, did not direct what bills Integrated would pay and did not decide that Integrated's payroll taxes would not be paid. Additionally, DeSanto's affidavit, which was a trial exhibit, does not admit

4

that he was one of the individuals who decided Integrated should stop paying the payroll taxes.

Avery next argues that the government did not establish she understand the IRS' request for documents. During the investigation, the IRS revenue officer asked Avery to bring to a meeting "Bank signature cards, cancelled checks, bank statements, meeting minutes, and any other corporate records for (the third and fourth quarters of 2013)." In her voicemail message in response, Avery told the revenue officer that she was not sure how to get all of the records. Avery now says "there was no proof that she understood the exact request of the IRS. She did ask for clarification in her voicemail." (ECF No. 124, PageID.1317.)

But again, the government presented documentary evidence and witness testimony that Avery had access to Integrated's operating account and corporate records of income and expenses and knew how to access them. The request for documents from the revenue officer was straightforward, the revenue officer gave no indication during her testimony that Avery did not understand the request, and, as the government points out, Avery's "voicemail did not seek clarification about what the letter meant when it asked for bank statements. Instead, [she] said she was not sure how to obtain the records." (ECF No. 125, PageID.1333.)

With respect to the letter to the IRS, Avery says that it contained *her lawyer's* interpretation of her statements. True. But there was no evidence that he interpreted her statements differently than what she conveyed to him. In other words, the explanations he provided to the IRS were based on information he received from Avery. And she reviewed

5

the letter before it was sent and signed it under penalty of perjury. So the Court cannot say the jury's finding that Avery corruptly endeavored to obstruct or impede an IRS investigation by providing false information to the IRS was against the great weight of the evidence.

Avery also suggests the government failed to prove that she did not act in good faith. (ECF No. 124, PageID.1318.) She points to the jury instruction that the "good faith of the defendant is a complete defense to the charge here because good faith on the part of the defendant is simply inconsistent with acting corruptly or with the purpose of attaining an unlawful benefit for herself or someone else." *Id*. But the government presented more than sufficient evidence to support that Avery wanted to benefit herself and her boss by providing false and misleading information to the IRS so that they would not be assessed or have to pay any penalty in connection with the unpaid payroll taxes.

The Court appreciates that Avery and the IRS may have conflicting interpretations of Avery's voicemail message and letter sent during the course of the IRS investigation into Integrated's unpaid payroll taxes. But the jury heard both sides from numerous witnesses and exhibits. The Court sees no basis to upset the verdict by either granting a judgment of acquittal or a new trial. Defendant's motion is DENIED.

IT IS SO ORDERED.

Dated: October 30, 2019

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE